GODDARD, Appellant,

v.

STABILE et al., Appellees.

[Cite as *Goddard v. Stabile*, 185 Ohio App.3d 485, 2009-Ohio-6375.]

Court of Appeals of Ohio,
Eleventh District, Trumbull County.

No. 2009-T-0005.

Decided Dec. 4, 2009.

---

23. See generally *Neighbors for Responsible Land Use v. Akron*, 9th Dist. No. 23191, 2006-Ohio-6966, 2006 WL 3825153, at ¶ 11.

486

Daniel S. White, for appellant.

DelBene, LaPolla & Thomas and Daniel P. Thomas, for appellees.

TIMOTHY P. CANNON, Judge.

{¶ 1} Appellant, Daniel O. Goddard, appeals the judgment entered by the Trumbull County Court of Common Pleas. The trial court granted a motion for summary judgment filed by appellees, Paul and Josephine Stabile.

{¶ 2} The Stabiles owned a home in Niles, Ohio. In May 2007, the Stabiles sold the residence to Goddard. As part of the sale, Paul Stabile completed a residential-property disclosure form. In response to the question "Do you know of any previous or current water leakage, water accumulation, excess moisture or other defects in the property, including but not limited to any area below grade, basement or crawl space?" Paul Stabile marked the box designated yes. Then, Paul Stabile provided the handwritten explanation "small dampness—does not flood."

{¶ 3} Paul Stabile answered no to the question "Do you know of any water or moisture related damage to the floors, walls or ceilings as a result of flooding; moisture seepage; moisture condensation; ice damage; sewer overflow/backup; or leaking pipes, plumbing fixtures, or appliances?" He also answered no to the question "Do you know of any movement, shifting, deterioration, material cracks/settling (other than visible minor cracks or blemishes) or other material problems with the foundation, basement/crawl space, floors, or interior/exterior

walls?" Finally, no response was given to a question about other known material defects.

{¶ 4} Goddard personally viewed the Stabiles' home three or four times prior to purchasing it. He was shown the home by Harry Pissini, a licensed real estate agent. Pissini reviewed the completed residential-property disclosure form with Goddard. Pissini specifically alerted Goddard that the Stabiles had indicated there was water intrusion in the basement. He advised Goddard to have this problem investigated. Despite Pissini's recommendation, Goddard did not have a professional inspection performed on the home prior to purchasing it.

{¶ 5} The parties executed a real estate purchase contract. In the contract, Goddard initialed the clause regarding a home inspection, indicating he was waiving his right to have a professional inspection. In addition, the contract contained an "as is" clause, which stated that Goddard was accepting the property in its current condition without any additional obligation from the Stabiles for repairs.

{¶ 6} After purchasing the property, Goddard discovered problems with water intrusion in the basement. He hired a basement waterproofing company to repair the basement. These repairs included installing a pressure-relief system, installing a J-channel system, and sealing cracks.

{¶ 7} In September 2007, Goddard commenced the instant action by filing a complaint against the Stabiles. The complaint alleged that the Stabiles committed fraud in the sale of the property. Specifically, Goddard alleged that the Stabiles failed to disclose and concealed certain defects. The Stabiles answered Goddard's complaint, denying the substantive allegations set forth therein.

{¶ 8} In August 2008, with leave of court, Goddard filed an amended complaint, asserting the additional count of mutual mistake of fact.[1] As a remedy for this claim, Goddard sought, in the alternative to damages, rescission of the contract. In his motion for leave to file his amended complaint, Goddard explained that there were problems with the porch of the residence, which were only recently discovered. He attached a copy of a proposal for work to be done to repair the porch. The Stabiles filed an answer to the amended complaint.

{¶ 9} On June 4, 2008, the trial court referred this matter to a magistrate. That same date, the trial court issued a judgment entry, that provided, "PT held. Def. to file MSJ by 9/15/08; Plaintiff to respond by 10/15/08; MSJ memos only 10/24/08. Case referred to Mag. Earnhart." On September 8, 2008, the Stabiles

---

1. This amended complaint was not signed by Goddard's counsel, in violation of Civ.R. 11. However, a second amended complaint was filed on September 15, 2008. This pleading is identical to the amended complaint filed in August 2008 and was properly signed by Goddard's counsel. For purposes of this appeal, we will consider these documents as one.

filed a motion to extend the dates for filing the dispositive motions, due to the fact that Goddard had filed an amended complaint. On September 10, 2008, the trial court granted the Stabiles' motion and held, "Dispositive motions to be filed by 10/15/08. Responses to be filed by 11/14/08. Memo MSJ reset to 11/21/08." Thereafter, on September 15, 2008, Magistrate Earnhart filed a "judgment entry" extending the dispositive motion date to October 15, 2008, and stating that "the Court will reset the response date and the hearing on Motion and the Trial." No further orders or judgment entries were filed by the magistrate or the trial court.

{¶ 10} On October 15, 2008, the Stabiles filed a motion for summary judgment. The Stabiles attached several exhibits to their motion for summary judgment, including Josephine Stabile's affidavit, a copy of the residential-property disclosure form, Harry Pissini's affidavit, a portion of the transcript of Goddard's deposition; and the land sale contract. On November 21, 2008, at 10:53 a.m., Goddard filed a brief in opposition to the Stabiles' motion for summary judgment. Goddard also attached exhibits to his brief, including his affidavit and an affidavit from Ron Jackson, the foreman of the crew of the basement-waterproofing company that had repaired the basement. Also on November 21, 2008, the trial court issued a judgment entry granting the Stabiles' motion for summary judgment.[2] The trial court's judgment entry states, "[Goddard] did not respond to the Motion." While the trial court's judgment entry is stamped November 21, 2008, the stamp does not contain a specific time it was filed. Accordingly, based on the current record before this court, we cannot conclusively determine whether Goddard's brief in opposition was filed before or after the trial court's judgment entry.

{¶ 11} As the result of a clerical error, copies of the trial court's final judgment entry were sent to the wrong attorneys. When this error was discovered, the trial court issued a judgment entry acknowledging the error and resetting the timeline for filing a notice of appeal.

{¶ 12} Since Goddard has filed his notice of appeal within 30 days of the trial court's reset timeline, we will consider it timely.

{¶ 13} Goddard raises the following assignment of error:

{¶ 14} "The trial court's decision to grant the defendants' motion for summary judgment constitutes reversible error."

{¶ 15} In order for a motion for summary judgment to be granted, the moving party must demonstrate:

---

2. Despite the judgment entry's stating that the matter was referred to Magistrate Earnhart, the record does not contain a magistrate's decision regarding the merits of the Stabiles' motion for summary judgment and it appears that only the trial court considered the motion.

{¶ 16} "(1) [N]o genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197.

{¶ 17} Summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact." Civ.R. 56(C). Material facts are those that might affect the outcome of the suit under the governing law of the case. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 18} If the moving party meets this burden, the nonmoving party must then provide evidence illustrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Civ.R. 56(E) provides:

{¶ 19} "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."

{¶ 20} Summary judgment is appropriate pursuant to Civ.R. 56(E), if the nonmoving party does not meet this burden.

{¶ 21} Appellate courts review a trial court's entry of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153. "*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 22} Initially, we will address the fact that the trial court did not consider Goddard's brief in opposition to the Stabiles' motion for summary judgment. Pursuant to the trial court's initial judgment entry concerning the timeline for this case, Goddard's brief in opposition to the motion for summary judgment was due on October 15, 2008. This date was extended by the trial court to November

14, 2008. Subsequent to the trial court's entry, the magistrate issued an entry on the timeline, which provided the same due date for the Stabiles' motion for summary judgment, but provided that "the Court will reset the response date and the hearing on Motion and the Trial." No further direction was given by the magistrate or the trial court.

{¶ 23} Thus, Goddard was informed by the trial court that his brief in opposition to the motion for summary judgment was due on November 14, 2008. However, on a later date, he was informed by the magistrate that the court intended to "reset" the due date for his brief in opposition. It appears that this confusion may have occurred as a result of the trial court's and magistrate's both independently ruling on the Stabiles' motion to extend the respective due dates of the various documents. The better practice would have been for Goddard to ask the trial court to clarify the actual due date. Civ.R. 56(C) is clear that the "adverse party, prior to the day of hearing, may serve and file opposing affidavits." Goddard has not assigned any error for the trial court's failure to consider his response to the motion. However, in light of the fact that there was confusion regarding the hearing date and the due date of Goddard's brief in opposition, and based on our de novo review, we will consider Goddard's brief in opposition to the Stabiles' motion for summary judgment.

{¶ 24} Goddard advanced claims of fraudulent concealment, fraudulent nondisclosure, and fraudulent misrepresentation. In his amended complaint, Goddard claimed he experienced "severe problems related to the undisclosed defects," which required "extensive repair." Although not specifically mentioned in the amended complaint, Goddard's claims apparently relate to the basement and porch of the home. We will initially address Goddard's claims relating to the basement.

{¶ 25} "The doctrine of *caveat emptor* precludes recovery in an action by the purchaser for a structural defect in real estate where (1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus. The term caveat emptor has traditionally meant " 'let the buyer beware.' " *Waleszewski v. Angstadt,* 11th Dist. No. 2002–L–113, 2004-Ohio-335, 2004 WL 144243, at ¶ 18, quoting *Layman v. Binns,* 35 Ohio St.3d at 177, 519 N.E.2d 642. " 'The doctrine of caveat emptor is designed to finalize real estate transactions by preventing disappointed real estate buyers from litigating every imperfection existing in residential property.' " (Citations omitted.) *Thaler v. Zovko,* 11th Dist. No. 2008–L–091, 2008-Ohio-6881, 2008 WL 5389607, at ¶ 31.

{¶ 26} In Jackson's affidavit, he states that he discovered various problems related to water intrusion in the basement upon arriving at the site and during the course of his work. He does not state that the problems were concealed. He further states that the problems "probably took a number of years" to develop. This evidence suggests that these problems were open to observation when Goddard inspected the property.

{¶ 27} We note that Goddard did not have a professional home inspection of the property performed, despite the Stabiles' disclosure that there was water intrusion and the specific recommendations of Pissini.

{¶ 28} In this matter, the real estate contract contained an "as is" clause. " '(W)hen a buyer agrees to accept property "as is," the seller is relieved of any duty to disclose latent defects.' " (Citations omitted.) *Thaler v. Zovko*, 2008-Ohio-6881, 2008 WL 5389607, at ¶ 37, quoting *Durica v. Donaldson* (Mar. 3, 2000), 11th Dist. No. 97–T–0183, 2000 WL 263785. Accordingly, as a matter of law, Goddard's claims of nondisclosure are barred by the "as is" clause. *Kimball v. Duy*, 11th Dist. No. 2002–L–046, 2002-Ohio-7279, 2002 WL 31886713, at ¶ 19.

{¶ 29} However, an "as is" clause does not preclude causes of action for fraudulent representation or fraudulent concealment. *Waleszewski v. Angstadt*, 2004-Ohio-335, 2004 WL 144243, at ¶ 23, quoting *Felker v. Schwenke* (1998), 129 Ohio App.3d 427, 430–431, 717 N.E.2d 1165. (Citations omitted.)

{¶ 30} "The elements which constitute the basis for a claim of fraudulent misrepresentation are: '(1) a representation, or where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and reckless-ness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying on it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance.' " *Kimball v. Duy*, 2002-Ohio-7279, 2002 WL 31886713, at ¶ 23, quoting *Cardi v. Gump* (1997), 121 Ohio App.3d 16, 22, 698 N.E.2d 1018.

{¶ 31} First, we note that the Stabiles disclosed the fact there was water intrusion in the basement. In describing the problem, the Stabiles stated "small dampness—does not flood." We recognize there is a vast spectrum of water infiltration between the levels of "small dampness" and "flooding." Howev-er, it is significant to note that Pissini, a real estate professional, was concerned about this disclosure and specifically advised Goddard to have the matter examined. Despite this warning, Goddard waived his right to have a professional inspection of the residence. Irrespective of Goddard's inaction, the fact that the disclosure alerted a licensed real estate professional that there could be additional problems with the basement demonstrates that the Stabiles' disclosure was not

made with the intent of misleading Goddard. Moreover, the fact that Goddard was informed by Pissini to have the matter inspected prohibits a finding that Goddard was justified in his reliance on the Stabiles' disclosure regarding the specific amount of water intrusion.

{¶ 32} "To prevail on a claim of fraudulent concealment, the injured party must establish: (1) actual concealment of a material fact; (2) with knowledge of the fact concealed; (3) and intent to mislead another into relying upon such conduct; (4) followed by actual reliance thereon by such other person having the right to so rely; (5) and with injury resulting to such person because of such reliance." *Chamar v. Schivitz,* 11th Dist. No. 2002–L–181, 2004-Ohio-1957, 2004 WL 834487, at ¶ 13, citing *Bagdasarian v. Lewis* (June 4, 1993), 11th Dist. No. 92–L–171, 1993 WL 419081.

{¶ 33} Goddard asserts that the Stabiles concealed the defects in the basement by caulking and painting certain areas of the basement. However, we again note that the Stabiles *admitted* that there was water intrusion in the basement. Accordingly, there was no intent to mislead Goddard regarding this issue.

{¶ 34} At first impression, the case sub judice appears to be analogous to this court's decision in *Waleszewski v. Angstadt,* 2004-Ohio-335, 2004 WL 144243. In *Waleszewski,* this court held that there was a genuine issue of material fact on the plaintiff's fraudulent-concealment claim concerning a wet basement. Id. at ¶ 12–24. However, *Waleszewski* is distinguishable from the instant matter on two important points. First, in *Waleszewski,* the seller specifically assured the buyers that there were no "problems with water seepage." Id. at ¶ 21. In this matter, the Stabiles did not deny water-seepage issues; instead, they disclosed the water-intrusion problem on the residential-property disclosure form. Second, in *Waleszewski,* the condition of the basement was dry when the buyer's professional home inspector conducted the inspection. Id. In the case sub judice, Goddard refused his option to have the home professionally inspected and agreed to accept the property "as is."

{¶ 35} Goddard claims that some of the water damage was hidden due to the placement of furniture in the basement. However, in his deposition, he acknowledged that he did not attempt to move the furniture. Nor does the record indicate that he asked for the furniture to be moved so he would have unimpeded access to those areas.

{¶ 36} In relation to Goddard's claims regarding the basement, the Stabiles disclosed that there was water intrusion; Goddard was advised to have the condition inspected; and despite this recommendation, Goddard did not have a

professional inspection performed. Accordingly, there are no genuine issues of material fact relating to the claims associated with the basement.

{¶ 37} Next, we address Goddard's claims regarding the porch.

{¶ 38} We note that the amended complaint did not mention any defects in the porch. "When a complaint is based upon fraud, 'the circumstances constituting fraud * * * shall be stated with particularity.'" *Kimball v. Duy,* 2002-Ohio-7279, 2002 WL 31886713, at ¶ 18, quoting Civ.R. 9(B).

{¶ 39} In addition to this procedural deficiency, Goddard's claims regarding the porch fail on their merits.

{¶ 40} In his affidavit, Goddard states, "The defects to the porch had been concealed by the Defendants having a new pad poured to cover the old cracked pad." Goddard has not submitted any evidence to demonstrate this practice is against the industry standard or otherwise unacceptable. Thus, there is no evidence that the condition of the pad was a "material defect," which required disclosure.

{¶ 41} The only other material in the record relating to the porch is a proposal to fix the porch, which was attached to Goddard's motion for leave to file his amended complaint. We note that this proposal was not properly before the trial court for the purpose of a summary-judgment determination, since it was not the type of evidentiary material specifically listed in Civ.R. 56(C), nor was it accompanied by an affidavit laying the proper foundation for its consideration. See *Diakakis v. W. Res. Veterinary Hosp.,* 11th Dist. No. 2004–T–0151, 2006-Ohio-201, 2006 WL 156732, at ¶ 20–22. However, even if this material was considered despite its evidentiary infirmity, it would not demonstrate a genuine issue of material fact on this subject.

{¶ 42} Goddard has not pointed to specific facts showing that there is a genuine issue of material fact on his claims of fraudulent concealment or fraudulent misrepresentation in relation to the porch.

{¶ 43} Goddard advanced a claim of mutual mistake in his amended complaint, wherein he sought the alternative remedy of rescission. In some circumstances, mutual mistake may be a ground for rescission of a contract. See *Reilley v. Richards* (1994), 69 Ohio St.3d 352, 632 N.E.2d 507. However, in this matter, Goddard received a residential-property disclosure form. Accordingly, "rescission is not an available remedy." *Chamar v. Schivitz,* 2004-Ohio-1957, 2004 WL 834487, at ¶ 18–20, quoting R.C. 5302.30(K)(3)(d) and *Wilson v. Safarek* (1999), 131 Ohio App.3d 622, 625, 723 N.E.2d 181.

{¶ 44} There were no genuine issues of material fact, and the Stabiles were entitled to judgment as a matter of law. Thus, the trial court did not err in granting the Stabiles' motion for summary judgment.

{¶ 45} Goddard's assignment of error is without merit.

{¶ 46} The judgment of the Trumbull County Court of Common Pleas is affirmed.

Judgment affirmed.

TRAPP, P.J., and RICE, J., concur.

