[Cite as *Doctor v. Marucci*, 2013-Ohio-5831.]

IN THE COURT OF APPEALS

ELEVENTH APPELLATE DISTRICT

LAKE COUNTY, OHIO


CHARLES R. DOCTOR, et al.,      :      **O P I N I O N**

       Plaintiffs-Appellants,      :

     - vs -      :      **CASE NO. 2013-L-056**

MICHAEL J. MARUCCI, et al.,      :

       Defendants-Appellees.      :


Civil Appeal from the Lake County Court of Common Pleas, Case No. 11 CV 003118.

Judgment: Affirmed.


*Daniel S. White,* Daniel S. White, Esq., 34 Parmelee Drive, Hudson, OH 44236 (For Plaintiffs-Appellants).

*Anthony J. Aveni,* Cannon, Aveni & Malchesky Co., L.P.A., 41 East Erie Street, Painesville, OH 44077 (For Defendants-Appellees).


CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Charles R. Doctor, et al., appeal from the judgment of the Lake County Court of Common Pleas, entered after a bench trial, in favor of appellees, Michael J. Marucci, et al. At issue is whether the trial court's judgment, concluding appellees were not liable for fraudulent misrepresentation or fraudulent concealment on a real estate sale and that the parties agreement could not be rescinded due to a mutual mistake of fact, was against the manifest weight of the evidence. We affirm the trial court.

{¶2} In mid-September 2006, appellees purchased the subject home. Appellees did not reside in the home but were regularly there through November 2006 renovating the property for the purpose of reselling it for profit. According to appellee, Michael Marucci, the home was sound structurally, but needed cosmetic work. Marucci was a former real-estate agent who owns a company, Municipal Services of America, that waterproofs basements and does concrete and sewer work. Marucci noted that the home had been waterproofed approximately 10 years before appellees purchased it. Neither Marucci nor Appellee Joseph Pennza noticed any signs of water intrusion in the home while they owned it.

{¶3} During the course of the remodel, Marucci testified appellees installed a new bathroom in the basement, hardwood floors, replaced paneling with drywall in the basement, installed drywall on a bare wall, installed new carpet, and painted the home. While drywalling the west wall of the basement, Marucci noticed "hairline fractures" in the wall but, given his professional background, believed them to be flexibility points that permit masonry to move. Such small fissures in a wall, in his opinion, are common in basements and insignificant. Marucci testified that he did notice the small fractures had been filled or treated, but since the house had been previously waterproofed, he thought nothing of the apparent repairs.

{¶4} After finishing the remodel, appellees filled out a residential property disclosure form stating they knew of no material cracks or other material problems with the foundation or the walls of the home. The home was listed for sale and appellees provided the real estate broker with the completed property disclosure form at the time of listing.

**{¶5}** In February 2007, appellants viewed the property with their realtor and received the disclosure form. Following a home inspection, appellants purchased the residence "as is" and moved into the home in March 2007. The following spring, in March 2008, Appellant Jennifer Doctor noticed, for the first time, water in the home's basement. Appellants thought the water was a freak occurrence and, as a result, did not attempt to locate the source of the water. In March 2009, water again came into the basement. Appellants contacted a plumber who discovered that certain clay tiles in the home's yard had collapsed and required replacement. The tiles were replaced with PVC pipes. In the springs of 2010 and 2011, however, the basement again flooded.

**{¶6}** In the fall of 2011, appellants had the basement waterproofed. While removing drywall from the basement's west wall, appellants discovered "serious cracks" with some form of filler that was applied at some point for repair. Due to the damage, appellants hired Ohio State Waterproofing to waterproof the basement in November 2011 at a cost of $16,720. Duane Martin, an employee of Ohio State Waterproofing, opined the cracks would have likely been present in 2007, just not as large.

**{¶7}** As a result of their discoveries, appellants filed a complaint against appellees alleging fraudulent inducement, fraud, and mutual mistake of fact pertaining to the sale of the subject property. Appellees filed a timely answer denying the allegations. After a bench trial, the trial court entered judgment in appellees' favor. This appeal followed.

**{¶8}** Appellants assign the following error for our review:

**{¶9}** "The trial court's decision in favor of the appellees Michael Marucci, Joseph Pennza and Lyndsy Pennza is against the manifest weight of the evidence and constitutes reversable [sic] error."

3

{¶10} In civil cases, when conducting a manifest weight of the evidence review, the court of appeals should affirm a decision that "'is supported by some competent, credible evidence.'" *Bryan-Wollman v. Domonko*, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶3, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202. Further, a court is obligated to presume the trial court's factual findings are correct. *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984). Finally, "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.* at 81.

{¶11} Appellants' complaint alleged fraudulent inducement. The trial court analyzed the claim as a fraudulent misrepresentation claim. The conflation of the two causes of action is inconsequential as the elements of each are essentially the same. *See e.g. Deutsche Bank Natl. Trust Co. v. Pevarski*, 187 Ohio App.3d 455, ¶43 (4th Dist.2010). The elements are: (1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that such knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) with justifiable reliance on the misrepresentation or concealment, and (6) an injury proximately caused by that reliance. *See Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 55 (1987).

{¶12} Additionally, in order to prevail on a claim of fraudulent concealment, a plaintiff must satisfy the following six elements: "'(1) an actual concealment[;] (2) of a material fact[;] (3) with knowledge of the fact concealed[;] (4) with intent to mislead

4

another into relying upon such conduct[;] (5) followed by actual reliance thereon by such other person having the right to so rely[;] and (6) with injury resulting to such person because of such reliance[.]' *Bagdasarian v. Lewis*, 11th Dist. [Lake] No. 92-L-171, 1993 Ohio App. LEXIS 2881, *6-*7 (June 4, 1993)." *Kimball v. Duy*, 11th Dist. Lake No. 2002-L-046, 2002-Ohio-7279, ¶25. Further, in analyzing the "knowledge" element of a fraudulent concealment claim in the context of a real estate transaction involving a property disclosure form, this court has recently indicated that "the seller is only required to disclose defects of which they have actual knowledge." *Tutolo v. Young*, 11th Dist. Lake No. 2010-L-118, 2012-Ohio-121, ¶46.

{¶13} To establish their claim for fraudulent inducement, appellants were required to establish appellees knew their statements on the disclosure form were false or were made with such disregard to the truth that knowledge could be inferred. To establish their fraudulent concealment claim, appellants had to establish appellees knowingly concealed their actual knowledge of material problems with the walls. The trial court found appellants failed to meet their burden. We agree with the trial court's analysis.

{¶14} The evidence demonstrated that the appellees, in their disclosure form, represented they had no knowledge of any water intrusion or structural problems in the home. Further, appellees Marcucci and Pennza specifically testified they did not observe and were not aware of any water problems in the home's basement. And appellants presented no specific evidence to undermine appellees' position. There was no evidence indicating that the home had water problems between September 2006 and February 2007, the timeframe of appellees' ownership of the residence. And, perhaps most significant, Appellant Jennifer Doctor conceded appellants had no

5

evidence that (1) appellees knew the basement leaked in 2007 or (2) appellees lied on the disclosure form. Although Martin testified the condition of the cracks in 2011 indicated the cracks would have "probably" existed in 2006 or 2007, he testified he had no actual knowledge of the condition of the wall during that time.

{¶15} In sum, appellants submitted no evidence that appellees' statements on the disclosure form or their testimony at trial was false, let alone that they knowingly falsified the information on the disclosure form. Similarly, appellants produced no evidence that appellees knowingly concealed actual knowledge that the wall had material cracks or that there had been water intrusion in the home prior to the sale. We therefore agree with the trial court that appellants failed to establish their claims for fraudulent inducement and fraudulent concealment.

{¶16} Appellants next argue the court's judgment that a mutual mistake of fact did not occur is against the manifest weight of the evidence. Again, we do not agree.

{¶17} A mutual mistake requires a mistake made by both parties regarding the same fact. *See Reilley v. Richards*, 69 Ohio St.3d 352, 353 (1994). A mutual mistake regarding a material part of a contract can be grounds for rescission of that contract. *Id.* at 352. A mutual mistake of fact is present where both parties are mistaken as to a basic assumption which has a material effect on the agreed exchange of performances. *Id.* at 353.

{¶18} The trial court, in ruling there was no mutual mistake, relied upon the Eighth Appellate District's decision in *Wallington v. Hageman*, 8th Dist. Cuyahoga No. 94763, 2010-Ohio-6181. In that case, the plaintiffs purchased a home, after an inspection, "as is." As part of the transaction, the defendants provided a residential property disclosure form which represented they disavowed any knowledge of current or

6

previous problems with water in the home's basement. One month after taking possession, however, the plaintiffs discovered water accumulation in the basement. The plaintiffs filed suit for fraud and mutual mistake. The trial court granted the defendants summary judgment. The Eighth District affirmed the trial court. With respect to the issue of mutual mistake, the court reasoned:

> **{¶19}** The evidence shows that after having the home inspected, the [Plaintiffs] entered into a contract for the sale of the property "as is." Therefore, the [Plaintiffs] cannot argue that the absence of water problems in the basement was a basic assumption upon which the contract was made. Also, the claimed defects in the property as to water intrusion issues do not go to the character of the property, were not material to the completion of the contract, and did not frustrate either side's ability to complete the contract. *Id.* at ¶27.

**{¶20}** We agree with the trial court that *Wallington* forms a sound basis for rejecting appellants' mutual-mistake claim. Appellants had the property inspected and were satisfied with the home "as is." Appellants' basic assumption upon which the contract was entered was that the home was acceptable in its then-present condition, in light of the inspector's examination and conclusion. To hold otherwise would essentially impute a warranty into the transaction, which is inherently inconsistent with the concept of an "as is" purchase.

**{¶21}** Moreover, the home did not immediately suffer water intrusion. Over one year after the purchase, water became noticeable in the basement. And, as discussed above, appellants failed to establish the home had previously been damaged by water, particularly during the time appellees owned the property. The mutual-mistake rule

7

applies to those situations where the parties are mistaken as to a material, *existing* fact at the time of contracting. *Mollenkopf v. Weller*, 10th Dist. Franklin No. 03AP-1267, 2004-Ohio-5539, ¶15, citing Calamari & Perillo, Law of Contracts (2 Ed.1977) 498, Section 13-13. Appellants' mutual-mistake argument presumes the home had an existing water problem at the time of the sale about which neither party was aware and, as a result, they each mistakenly assumed no problem existed. Appellants' argument consequently assumes what the evidence failed to establish; namely, that there was an existing water problem at the time of the sale. Without evidence of a water problem at or before the time of purchase, appellants' argument is structurally flawed. We therefore hold the trial court's ruling there was no mutual mistake is consistent with the evidence.

{¶22} Appellants' assignment of error is without merit.

{¶23} For the reasons discussed in this opinion, the judgment of the Lake County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.